UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALMON HOPKINS,<br>　　　　Plaintiff | ) ) ) | CIVIL ACTION NO. 3:23-CV-1675 |
| v. | ) ) ) | (ARBUCKLE, M.J.) |
| JAMES PETRUCCI, *et al.*,<br>　　　　Defendants | ) ) | |

## MEMORANDUM OPINION

### I.　　INTRODUCTION

Almon Hopkins ("Plaintiff"), a pretrial detainee at Lackawanna County Prison, initiated a pro se civil rights complaint against a prosecutor and three police officers after his businesses were "raided" by police. Currently before the Court are two motions to dismiss. Despite being given multiple opportunities to do so, Plaintiff has not responded to the motions. Accordingly, it will be ordered that:

(1)　Plaintiff's Amended Complaint be DISMISSED with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure;

(2)　Defendant Krowiak's Motion to Dismiss (Doc. 17) be DEEMED MOOT; and

(3)　Defendants Gilmartin, Hyler, and Petrucci's Motion to Dismiss (Doc. 26) be DEEMED MOOT.

### II.　　BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges he is part owner of two businesses: Prime Cutz Barber Shop and Pop's Tires. (Doc. 11, p. 4). The businesses are in the same building.

On November 11, 2022, the Scranton Police Department "raided" the businesses. *Id.* Plaintiff was driving up to the businesses when he witnessed Scranton Police walk towards the building dressed in "riot gear." *Id.* Plaintiff alleges he approached the police and attempted to stop them because he was concerned the police would scare the children inside. *Id.* In response, the police yelled "search warrant!" *Id.* Plaintiff asked for a copy of the warrant and was advised it was "on the way." *Id.* Plaintiff was detained and placed in handcuffs.

While waiting (in handcuffs) to see a copy of the warrant, police asked Plaintiff for consent to search his vehicle. (Doc. 1, p. 5). Plaintiff again asked to see the search warrant. He alleges his request was ignored. He was then instructed that if he withheld consent to search the vehicle it would be impounded. *Id.* Plaintiff consented to the vehicle search.

Plaintiff alleges that when the businesses were searched, the police caused extensive property damage. He alleges that they broke cabinet doors, pulled wire from the ceiling and walls, broke ceiling tiles, overturned cabinets, opened bottles of cleaning products and dumped the contents on the floor, dumped rubber glue on the floor, scattered receipts and records across the floor, broke a computer, broke a television, scattered tools and toys across the floor, emptied the refrigerator and freezer onto the floor, and dumped cooking oil on the floor. *Id.* Plaintiff alleges the building was condemned because of the damage.

Plaintiff alleges that Assistant District Attorney Andrew Krowiak, as well as police officers James Petrucci, Jason Hyler, and Kyle Gilmartin were all present at the scene.

On October 10, 2023, Plaintiff lodged a pro se civil rights complaint. (Doc. 1). Although Plaintiff requested leave to proceed *in forma pauperis*, he did not use the correct form. (Doc. 5). The Clerk of Court mailed Plaintiff a copy of the correct form, which Plaintiff returned. On November 20, 2023, Plaintiff was granted leave to proceed *in forma pauperis*, and Plaintiff's Complaint was reviewed pursuant to 28 U.S.C. § 1915(e)(2). (Docs. 8, 9). In its November 20, 2023 screening order, the Court explained that as written Plaintiff's Complaint did not state a plausible claim. Plaintiff was given until December 22, 2023 to file an amended complaint.

On December 22, 2023, Plaintiff filed an amended complaint. (Doc. 11). As Defendants, Plaintiff named Assistant District Attorney Andrew Krowiak, as well as police officers James Petrucci, Jason Hyler, and Kyle Gilmartin in their official and individual capacities. Plaintiff asserts claims that his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments were violated, that Defendants were negligent, and that Defendants harassed him. As relief, Plaintiff requests compensatory and punitive damages, and requests that Scranton change its search warrant procedures.

Defendants, as grouped, are represented by different attorneys, and each group filed a Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff did not respond to either motion. We will discuss the history of each motion below.

### A.  DEFENDANT KROWIAK'S MOTION TO DISMISS

On February 13, 2024, Defendant Krowiak filed a motion to dismiss. (Doc. 17). On February 27, 2024, Defendant Krowiak filed a brief in support. (Doc. 24). The Court issued an order directing Plaintiff to respond on or before March 12, 2024. (Doc. 25). In that order, Plaintiff was instructed that the failure to respond may result in the dismissal of the claims against Defendant Krowiak. *Id.*

On March 14, 2024, the Court received a motion requesting an additional thirty days to respond to Defendant Krowiak's Motion. (Doc. 27). Plaintiff's Motion was granted, and he was given until April 15, 2024 to respond to Defendant Krowiak's Motion to Dismiss. (Doc. 29). No response or request for additional time was received.

On April 23, 2024, Defendant Krowiak, through counsel, submitted a letter reporting that Plaintiff did not file a timely response to his Motion to Dismiss. (Doc. 33). In the letter, Defendant Krowiak requested that his motion be deemed unopposed and that Plaintiff's claims against him be dismissed with prejudice.

On April 25, 2024, the Court issued an order directing Plaintiff to respond to Defendant Krowiak's Motion to Dismiss on or before May 23, 2024. (Doc. 34).

Plaintiff was, once again, advised that the failure to respond may result in the motion being deemed unopposed or the dismissal of Plaintiff's case. No response was received.

> **B.   DEFENDANTS GILMARTIN, HYLER, AND PETRUCCI'S MOTION TO DISMISS**

On March 8, 2024, Defendants Gilmartin, Hyler, and Petrucci filed a Motion to Dismiss. (Doc. 26). They sought, and were granted, additional time to submit a supporting brief. (Docs. 28, 30). On April 2, 2024, Defendants Gilmartin, Hyler, and Petrucci filed their supporting brief. (Doc. 31). On April 3, 2024, the Court issued an order directing Plaintiff to respond on or before April 16, 2024. (Doc. 32). In that order, Plaintiff was instructed that the failure to respond may result in Gilmartin, Hyler, and Petrucci's Motion being deemed unopposed or the dismissal of Plaintiff's case. *Id.* No response was received.

On April 25, 2024, the Court issued an order directing Plaintiff to respond to Defendants Gilmartin, Hyler, and Petrucci's Motion to Dismiss on or before May 23, 2024. (Doc. 34). Plaintiff was, once again, advised that the failure to respond may result in the motion being deemed unopposed or the dismissal of Plaintiff's case. No response was received.

On May 24, 2024, Defendants Gilmartin, Hyler, and Petrucci, through their counsel, filed a letter reporting that Plaintiff did not respond to their Motion. (Doc. 37). In the letter, Defendants Gilmartin, Hyler, and Petrucci requested that their

Motion be deemed unopposed and that Plaintiff's claims against them be dismissed with prejudice.

### III.  LEGAL STANDARD

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute or failure to abide by a court order, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."[1] A district court also "has authority to dismiss an action *sua sponte* if a litigant fails to prosecute or to comply with a court order."[2]

Decisions regarding dismissal of actions for failure to prosecute or abide by a court order rest in the sound discretion of the court and will not be disturbed absent an abuse of discretion.[3] A court's discretion to dismiss an action for failure to prosecute or abide by a court order, while broad, is governed by certain factors, commonly referred to as *Poulis* factors. Those factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an

---

[1] Fed. R. Civ. P. 41(b).
[2] *Qadr v. Overmyer*, 642 F. App'x 100, 102 (3d Cir. 2016) (citing Fed. R. Civ. P. 41(b)); *see also Adams v. Trustees of N.J. Brewery Emps. Pension Trust Fund*, 29 F.3d 863, 871 (3d Cir. 1994) ("The Supreme Court affirmed, stating that a court could dismiss *sua sponte* under Rule 41(b).").
[3] *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citations omitted).

analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).[4]

"In balancing the *Poulis* factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case."[5] Consistent with this view, it is well-settled that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint."[6] Moreover, recognizing the broad discretion conferred upon district courts in making judgments weighing these six factors, the Court of Appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.[7]

## IV. DISCUSSION

Here, Plaintiff has failed to prosecute his case and did not comply with the Court's orders directing him to do so. Accordingly, for the reasons explained herein, our consideration of the *Poulis* factors weighs in favor of dismissing Plaintiff's lawsuit under Rule 41(b) of the Federal Rules of Civil Procedure.

---

[4] *Id.*
[5] *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).
[6] *Briscoe*, 538 F.3d at 263 (internal citations and quotations omitted).
[7] *See, e.g., Emerson*, 296 F.3d 184; *Tillio v. Mendelsohn*, 256 F. App'x 509 (3d Cir. 2007); *Reshard v. Lankenau Hosp.*, 256 F. App'x 506 (3d Cir. 2007); *Azubuko v. Bell Nat. Org.*, 243 F. App'x 728 (3d Cir. 2007).

The first and fourth *Poulis* factors—the extent of Plaintiff's personal responsibility, and whether Plaintiff's conduct was willful or in bad faith—weigh in favor of dismissal. Plaintiff is representing himself in this matter. It is his responsibility to abide by Court orders and to timely respond to any motions filed in this case.[8] Therefore, the first *Poulis* factor weighs in favor of dismissal. On multiple occasions, and in reference to multiple motions, the Court informed Plaintiff of his responsibilities. Plaintiff failed to fulfill his obligations despite these warnings and despite his awareness of the consequences for non-compliance. He demonstrated the ability to request additional time but did not do so. Therefore, Plaintiff's failure to comply with the Court's orders directing Plaintiff to respond to the two pending motions to dismiss, and setting deadlines for those responses, is willful.[9]

The second *Poulis* factor, whether the adverse party has suffered prejudice because of Plaintiff's dilatory behavior, also weighs in favor of dismissal. Examples of prejudice in this context include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."[10] Prejudice for purposes of the

---

[8] *Colon v. Karnes*, No. 1:11-CV-1704, 2012 WL 383666 (M.D. Pa. Feb. 6, 2012) (reasoning that where a Plaintiff is proceeding without an attorney, it is the Plaintiff's responsibility to comply with court orders).

[9] *See, e.g., Qadr*, 642 F. App'x at 103 (affirming a District Court's Rule 41 dismissal where it held that the plaintiff failed to comply with three orders and failed to respond to Defendants' motion to dismiss).

[10] *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).

*Poulis* analysis, however, does not mean irremediable harm.[11] Although this factor does not weigh heavily in favor of dismissal given the early stage of this litigation, it is not neutral either. Plaintiff's failure to respond to Defendants' Motions frustrates and delays the resolution of this case.

The third *Poulis* factor, whether Plaintiff exhibited a history of dilatory behavior over the life of this case, also weighs in favor of dismissal. For the purposes of a Rule 41(b) analysis, a litigant exhibits a history of dilatoriness when his conduct repeatedly delays the progression of a case, or results in extensive delay. Plaintiff's conduct in this case, repeatedly failing to respond to multiple motions to dismiss despite being ordered to do so by the Court multiple times (Docs. 25, 32, 34), amounts to a history of dilatoriness.[12]

The fifth *Poulis* factor requires the Court to consider the effectiveness of sanctions other than dismissal to assure this litigation progresses in an orderly fashion. Generally, a litigant's pro se status severely limits the court's ability to utilize lesser sanctions.[13] This case is no exception. Plaintiff is proceeding *in forma*

---

[11] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).
[12] *Adams*, 29 F.3d at 874; *see also Qadr*, 642 F. App'x at 103 (affirming a district court's dismissal of a complaint where the pro se litigant repeatedly failed to comply with orders directing him to respond to a motion to dismiss).
[13] *Cribbs v. Pa. Dep't of Corr.*, No. 3:22-CV-1950, 2023 WL 5103139, at *3 (M.D. Pa. Aug. 9, 2023) (citing *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011), *Emerson*, 296 F.3d at 191, and *Nowland v. Lucas*, No. 1:10-CV-1863, 2012 WL 10559, at *6 (M.D. Pa. Jan. 3, 2012)).

*pauperis* in this action and is currently in jail. Given Plaintiff's limited resources, it is unlikely Plaintiff will be able to pay any monetary sanction. Plaintiff has failed to comply with multiple orders directing him to respond to Defendants' Motions. Considering his history of non-compliance, we have no basis to believe Plaintiff would comply with an order imposing a lesser non-monetary sanction. Thus, there does not appear to be a lesser sanction that would assure the orderly progression of this litigation.

Last, before dismissing a case, the Court must consider the meritoriousness of a litigant's claims. A claim is deemed meritorious when "the allegations of the pleadings, if established at trial, would support recovery by plaintiff . . . ."[14] "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[15] Even assuming, however, that Plaintiff's claims could survive dismissal under Rule 12(b)(6), consideration of the sixth *Poulis* factor cannot save Plaintiff's case because he is wholly noncompliant with his obligations as a litigant. No one *Poulis* factor is dispositive, and in this case the untested merits of Plaintiff's claims, standing alone, do not outweigh the balance of the other factors. Therefore, given that the first five

---

[14] *Poulis*, 747 F.2d at 870.
[15] *Briscoe*, 538 F.3d at 263.

factors weigh in favor of dismissal, we will dismiss Plaintiff's case for failure to prosecute and failure to abide by a court order.

V.   **CONCLUSION**

    Accordingly, we conclude that:

(1)   Plaintiff's Amended Complaint (Doc. 11) will be DISMISSED with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

(2)   Defendant Krowiak's Motion to Dismiss (Doc. 17) will be DEEMED MOOT.

(3)   Defendants Gilmartin, Hyler, and Petrucci's Motion to Dismiss (Doc. 26) will be DEEMED MOOT.

(4)   An appropriate order will be issued.

Date: June 5, 2024                          BY THE COURT

                                               *s/William I. Arbuckle*
                                               William I. Arbuckle
                                               U.S. Magistrate Judge